Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Daniel Streetman, and I'm going to do my best to reserve two minutes for a rebuttal. With the Court's permission, I'd like to begin with the second issue that I've briefed, namely that of what I've referred to as triple counting under the Guidelines. And in this case, the District Court enhanced the Guideline range applicable to Mr. Streetman in three distinct ways that's at issue in this appeal. First, it applied three additional levels under multiple count analysis under 3D1.4. Second, it applied five additional levels for a pattern of activity under 4B1.5. And then third, it applied consecutive sentencing. Take the consecutive sentences out of it for a second. Sure. Mr. Streetman received three sentences that ran consecutively, 30, 15, and 15, right? That is correct. Is there any double counting on the two 15-year sentences? Strictly speaking, the primary double counting effect that I'm concerned about, that I think this appeal is concerned about, is the application of the multiple count analysis in conjunction with... So what I'm trying to do is you have a 30-year sentence, and I understand your arguments on that one. I'm trying to figure out whether there's even double counting on the two 15-year sentences. Aren't they just Guideline sentences? No, Your Honor. I think there is double counting, and the reason basically refers to math, which is not necessarily my strong suit. But what happened here is the base offense level was set at 32. There were several additional enhancements that I'm not taking issue with as part of this appeal. Yeah. So put on, just without the enhancements that you're attacking, and let's just assume there was only, and we were looking at each sentence separately. We're not worried about the consecutiveness of them. Aren't the two 15-year sentences not double counting at all? I think the problem is, with the enhancements for both multiple count analysis and pattern of activity, the adjusted offense level ended up at 48. So the acceptance of responsibility really didn't matter at that point. They've lowered it down to 43. We're missing each other, and I don't want to waste too much of your time on this. You used too much of your time on this. I don't think it's a waste. I'm just trying to figure out if I were only analyzing in isolation the two 15-year sentences, is there any enhancement problem as to either of those? I think I understand the question now. If my argument was the guidelines were calculated all correctly, would I have an objection to consecutive sentencing? I think the answer to that question would be no, for double counting purposes. Okay. Now I understand your argument. I don't understand your argument, though, about how the sentences were calculated incorrectly. The guidelines' goal is to account for the crimes against each of the victims. That's correct, Your Honor. My argument is that in this case, in essence, the pattern of activity enhancement and the multiple count analysis were the same, and they addressed the same issue. There were three levels added for multiple counts. So because the defendant exploited multiple children multiple times, that's, in your view, double counting pattern of activity in victims. The more, the worse he is, the less it should count? No, Your Honor. The problem here is that the district court did. I had made my objections at, if we look at excerpt page 65, I had made my objections orally after making them explicitly in writing. The district court's response was that it understood my concern, and it's very much like relevant conduct concerns that the sentencing guidelines always raise, I think. However, I think it is an accurate use of the sentencing guidelines, and so I'm going to overrule the objection. At no point did the district court say, I find the pattern of activity enhancement applies based on multiple instances with one individual, the same individual. Well, but you've got three separate victims here, correct? Yes. So if the district court had merely given the guideline sentence without enhancements for each of the victims, surely it could have run the sentences consecutively. Could it not? Legally, the court could, but I think. And that would have been 90 years. Not if my objections are correct. No, that's right. And this is where the mask gets into it. I was asking you to assume that the enhancements didn't apply. Not if you're, not according to guidelines, but he still could have done the 90 years. The court could have, but if, for example, the pattern of activity enhancement didn't apply, then the guideline range, even with the multiple count analysis, would only be 292 to 365 months, as opposed to the 1,080 months that we were faced with. Okay, so 292 is how many years? 292 is. Just a little short of 15. 292 is 27. 27 years. So my point, my point is that the judge could have given here, because there are three separate victims, even without the enhancements, a guideline sentence exceeding, right, you do the math. So I'm trying to figure out what the problem is with respect to the sentences on the second two convictions. The problem is that in this case, it's abundantly clear that what the court did was calculate a total overall punishment level of 1,080 months based on the guidelines, and then did a 3553A analysis based on that 1,080 months. If, however, the pattern of activity enhancement shouldn't have applied, the total offense level applicable to all three counts would have been. So you're basically just making a guidelines argument that said he did it wrong, and yes, he could do the same thing, but he has to get his calculations right. Yes. That's exactly correct. Isn't that for the Sentencing Commission to decide whether the pattern of activity and the number of victims overlap, and they haven't taken the opportunity to do so? Your Honor, certainly the Sentencing Commission is entitled to make determinations as to what they should punish for. But under the Reese case that I've cited in my briefs, ultimately, it's up to this court to determine whether, even if the Sentencing Commission allows double counting, whether it's nevertheless appropriate. See, and you and I are missing each other on one point here, so I want to come back to it. It's not the consecutiveness of the sentences really that you object to, is it? It's the length of the first sentence. It's the length of the total offense level based on the guidelines, because that is the number that drove, I believe, the ultimate consecutive sentences. Right. But you agree that this is a classic case for consecutive sentences, isn't it? You have three different victims. No, Your Honor, I wouldn't agree with that because, again, if we look at the guidelines, the guidelines are computed with multiple count analysis. We're missing each other once again. We have three different victims in this case, correct? Yes. Three different offenses involving different people. That's correct. In a typical case, we would say that's the classic circumstance for consecutive sentences, wouldn't we? I think that is a case, Your Honor. Okay, so your only objection in this case is that you think that by inappropriately applying enhancements, the judge arrived at a total sentence, which you think was too long. Yes. Okay. Yes. That's what Judge Berzon was asking. I just wanted to make sure I understood. Yes, that it is ultimately the total guideline calculation that drove the decision as to how to run the sentences consecutively, and that if a lesser guideline range were applicable, such as 292 to 365, then the need to run the sentences consecutively as we're done. Was there evidence in the sentencing, in the pre-sentence report and otherwise with regard to the sentencing, was there evidence that with regard to each of these victims, there was a lot more child pornography than he was actually convicted of? I'm not exactly sure what you're understanding. As I understand it, there were many, many, many photos. Was he convicted of many, many, many photos or a couple of photos? I'm not sure. He was convicted of what he was charged with. The charging documents did not define how many photos were involved. Sometimes pre-sentence report includes other similar conduct. For example, you made a plea deal. There were 500 victims. You pled to three. Correct. Your Honor, in full candor, the PSR did document a certain amount of other activities. Isn't that the pattern, which is separate from the multiple counts? Because the district court never made that finding. Well, he said there was a pattern. He said there were multiple counts and there was a PSR to support that, apparently. Did the district court adopt the PSR? No. I've reviewed the transcript at length. Nowhere does it say, for example, I'm adopting the factual findings in the PSR. Did you object to the PSR, the factual findings? I objected to some of the factual findings, Your Honor. In all candor, I did not object to every single factual paragraph. Did you object to the fact that there are a lot more than what he was actually convicted of? Your Honor, I don't believe that that fact was explicitly addressed, although there was argument and testimony from an FBI special agent that oftentimes metadata is not accurate, and the metadata was largely the basis for finding that there were multiple incidents. What is metadata? You mean from the computer? Correct. Because they judged the scope of the activity based on photos and the like that were found on a computer, tablet, et cetera. So that was largely the basis for different occurrences. I see him over time. Thank you very much. We'll give you one minute, Roberto. I may please the court and counsel. Judge Hurwitz, I'd like to answer your question first. This is a classic case that calls for consecutive sentences. I mean, let's frame this case. And I think that's right. And that's why I want to go back to what I think the essential argument is, which is simply that the guideline calculations was wrong. I think that's correct, Your Honor. Even in a case in which consecutive sentences are required, if there's an improper guideline calculation, we usually say to the district judge, go back and do it right. So tell me why the guidelines calculation was not wrong in this case. The guideline calculation is correct in this case. And it's not wrong because counsel, the defense is conflating a pattern of activity with a number of victims analysis. You can have multiple victims. You can. As I understood where we ended up, he said, yes, you could, but there was no finding. I think there was an implicit finding in this case. I think there was certainly a finding in this case. That was the testimony that the court relied on when the court went through its 3553 factors. I think implicit in the court's 3553 analysis. Implicit is always a weasel word. I think within the court's 3553 analysis. What did it actually say? Well, the court made findings and went through a very meticulous 3553 analysis with regard to pretty much every issue. What specifically did he say about the pattern question? The court made an analysis of history and characteristics, nature and circumstances. And at the portion of the court's analysis of nature and circumstances and seriousness of the offense, I believe at that point, the court is functionally making that there is a pattern of conduct here. And that analysis was done at ER 139 through 140. The court analyzed the seriousness of the offense in respect to the law. Noted the necessity to protect the public and further crimes of the defendant. And the district court talked about the natures and circumstances of the offense, which it called horrific. In the course of that analysis, the district court is making a determination there was a pattern of activity here. The PSR is replete with that pattern of activity here. I'm not seeing this, actually. I mean, there's a lot of talk about his psychological problems and so on. That's why I wanted to go back to you, Your Honor. What this case is. Let's frame this case for what it is. The defendant is complaining about a downward departure of 30 years. That's what we're, that's, that's what we're talking about. And that's why in the end, his arguments may be fruitless. But even if a judge incorrectly calculated the guidelines, the guideline sentence and then, and then departed downward, we nonetheless would say, go back and do it again. I agree with Your Honor.  But that's why I'm not, that's why when you say, well, he got a downward departure, the answer is, well, yeah. But that's not what we're here to calculate. We're here to calculate whether the guidelines were correct. I see the Court's point. But the Court's calculation of 1,080 months as the proper guideline sentence to start with was correct. Because there can be multiple victims, but with different types of conduct. Show me where in the, the part you refer me to was not, was the 3553 analysis. But where is the guideline analysis by the District Court? Guideline analysis by the District Court, Your Honor. On page 66, he says, I think it's an accurate use of the sentencing guidelines, so I'm going to overrule that objection. Is that it? Yes. Yes, Your Honor. And I'm also looking at 92. Now, the Court goes through at 92, 94, 95, talks about the different victims who were victimized in this case and the times in which they were victimized. So, the time in which they were victimized, is that the pattern? That's the pattern. You have multiple victims who were victimized over a, in the same types of victimization over an extended period of time. Could a court find a pattern based simply on these three? Yes. And the court did find, I mean, the defendant did plead guilty to victimizing these three. Yes. And as I understand it, in this record, the relevant offenses occurred on at least three different days. Absolutely three different days. What if they'd occurred on the same day? In other words, I'm trying to figure out what the limits of this statute are. So, let's assume that he downloaded three pictures of the same victim on one day. Would that be a pattern? It's interesting that you bring that up, Your Honor, because counsel and I were discussing that. Where's the temporal limit here? What happens if it's a pattern that occurs over the course of an hour with three victims on the same day? And I think that would be a question for a different case. I know. That's why I'm asking it. So, you don't want to answer that one, so let me make it slightly different. What if it's three different victims, but he downloads them in quick order? Then do we have a pattern? It seems to me you have to say yes, don't you? I think we would have a pattern, but in this instance, of course, we're talking about production where he's naked. It's not a receipt or a download case. Well, what I'm trying to do is just focus on the crimes of conviction for a moment, so we don't have to worry about what else the judge found or didn't find. And it seems to me your first point is correct, that if you have three different victims on three different days, that's probably sufficient to show a pattern of activity. So, now my question is the same one you and counsel were discussing on the way in. What's the limits of that principle? I would imagine, Your Honor, that the court would be uncomfortable if it was a very tight temporal package, if the activity was occurring over a day or two. But this is activity that's disparate over a span of years. Well, when we focus on these three victims, is it? It is, Your Honor. In fact, the factual basis of the plea agreement, which is at ER 13 and ER 14, the defendant pled guilty and agreed to a factual basis wherein images were produced, the sex acts were recorded by this defendant that he committed on these victims on May 2nd, 2014, continuing until June 28th, 2014, with victim B. And then images were produced on November 17th, 2013, and continuing to June 5th, 2015, with victim C. And with regard to... And this is what he pled to? This is what he pled to. This is the factual basis in the plea agreement at ER 13 and 14. And also, with regard to victim A, we have yet another disparate time frame. Images were produced on August 25th, 2011. So we have a range of time with each victim, and a specific time with another victim. So do you need to go beyond these three victims to establish your pattern? No. I don't believe so, Your Honor. That's certainly not what the guidelines cover. Actually, there is no evidence about any other victims, is there? I thought we were basically talking about these three victims. There is information in the PSR. But that's not what we're talking about. We're talking about the fact that the conviction, what was the conviction for this whole time period for each of these people? I would say yes, Your Honor, because that's the factual basis to which he pled that supports the basis for counts 1, 2, and 3. But he wasn't charged with the whole time period, right? I'd have to go back. I mean, you're better off, actually, if he wasn't, it seems to me. The charges just say on or about. They do. And those days, those are different dates. They do. And they're different dates. I'm looking at the indictment at ERA 1. We have 2011, August 25, 2011 for count 1. We have May 1, 2014 through continuing to June 28, 2014 for count 2. We have November 17, 2013. Let me ask you something. Supposing, I mean, ultimately, as I understand it, your argument on double counting, I guess there are two questions here. One is double counting. The second, which she isn't exactly arguing, is that the pattern, is whether the pattern enhancement was correct in and of itself. And you say it was because as to each of these people, there was a pattern. Yes, Your Honor. As to each of these people. And so, but ultimately, your position, at least in the briefs, is that there's no double counting problem anyway because double counting is okay as long as, even if it was the same events, unless a guideline says otherwise, essentially. Essentially, Your Honor, this is double counting that is mandated by the guidelines because we have different harms and different victims. Well, no, but I understand the double counting argument to be that the multiple counts and the pattern are essentially the same thing. That's their argument. Yes, that's their argument. The government's argument is the multiple counts and the pattern are different things. Well, suppose they're the same thing. I gather your argument is it still wouldn't be double counting. It still wouldn't be double counting. Because Congress can say, or the sentencing guidelines can say, count this and count that. If you have a victim who's over 6 feet tall, count it. If you have a victim who's African-American, count it. And if you have one victim who's over 6 feet tall and African-American, you count it twice. And the guidelines are, that the defense objects to, are directed toward different harms. The guideline with regard to, are there different victims here, is you could have different victims and have permissible, what they call double or triple counting, but based on completely different types of crimes. A murder, an assault, a theft. But did you answer to Judge Berzon's question differently? What you're saying is, as long as double counting is authorized, either by the guidelines or the statute, it's fine. There's nothing inherently wrong with double counting. What you've got to find out is whether it's authorized by the relevant law. That's correct, Your Honor. And I would say that with regard to 4B1.5, that is a very specialized and particular harm that the guidelines are looking to address. This guideline applies, reading the background section of the guideline in the commentary. This guideline applies to offenders whose incident offenses or convictions were sex offenses committed against a minor, et cetera. And it relates to a pattern of activity with regard to those types of victims. Okay. Thank you very much. Thank you, Your Honor. We'll give you one minute to rebuttal. Thank you. Very briefly, there was a question about where it was in the record that the court adopted the guidelines or made its guideline calculations. It didn't. There was no statement that we often see about, I find that the base offense level is 40, I find, you know, et cetera. It didn't have. My review, I was reading it back on the plane over this morning. It didn't happen. So we have a silent record as to the basis for the denial of my objections. We have a silent record as to how the guidelines were arrived at. But you, as I understood, and maybe I'm wrong, your objection wasn't to the pattern enhancement as such. It was to the assertive redundancy. Is that right? I think that's correct, Your Honor. But my point is, either way, the guideline calculations are horribly skewed. Because if you applied the multiple count analysis, but not pattern of activity, the guideline range total offense for all three offenses is 292 to 365. I mean, you could, on the record, as I understand it, either with regard to the factual basis for the plea or what's in the PSR, find, could you not, that there were multiple counts, which we know there were. And that with regard to the victim in each of the counts, there was a pattern beyond what he was convicted of, of production or procurement. Your Honor, if the district court had adopted the PSR, then I would agree there were factual allegations. What about the plea agreement? The factual basis of the plea agreement. Your Honor, I hate to sound too loyally. There's one issue that I would actually need to review in the record. I believe, and I'm happy to submit a 28-J letter to clarify this point, I believe that either at the change of plea hearing or early on in the sentencing hearing, it was stated that the basis for those dates was the metadata. That it was not an admission as to the scope, but that the basis was that the metadata would indicate that there were photos uploaded or downloaded during that period of time. So it was an admission as to what the metadata would show, but not necessarily that it actually happened. I would need to go back and review the entire record. You're right. That does sound pretty loyally. I did apologize to start. You're not the first thing in the world to be loyally, you know. But I will, I'll go back through the record, and if there's something to add, I will submit. All right. Thank you very much. Thank you. Before you sit down, I have one other question. The pre-sentence report appears to say that the United States and the defendant agree about the base level. They agree that it's increased by four levels if the following occurred, et cetera, et cetera. So given that, given your agreement that the base level is 32 and it's increased if various things occur, and the judge found various things occurred, I'm not sure how we can say the judge didn't have a, we don't have a record that we can review. In other words, it's stipulated that we start at 32. It's also stipulated that various increases apply if the judge makes appropriate findings. So I'm not sure how we lack a record in this case. Well, there was never a stipulation that the pattern of activity enhancement would apply. No, no. But there was a stipulation that if it did apply, it would occur, it would raise the level by a certain amount. Not the pattern of activity enhancement. That wasn't mentioned in the plea agreement. But your ultimate problem, as I understand it, is the judge never made a finding. That's what you're saying. I think in regard to the government's arguments that, in fact, there is a pattern of activity that's demonstrable, there was no finding that that pattern of activity existed. So as the record stands, the only evidence of pattern of activity would be multiple counts. I see. Okay. Thank you very much. Thank both of you for your argument. United States v. Treatment is submitted and we will take a short break. Thank you.
judges: Thacker, Berzon, Hurwitz